### Riester *v.* Philadelphia Transportation Company, Appellant.

Argued November 17, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*S. S. Herman,* with him *Bernard J. O'Connell,* for appellant.

176

*Michael A. Foley,* for appellee.

OPINION BY MR. JUSTICE LINN, January 3, 1949:

In this personal injury action the defendant complains of a $25,000 judgment. Liability was admitted; the question for the jury was the amount to be awarded. The jury rendered a verdict of $65,000, which by remittitur was reduced to $25,000.

On November 5, 1946, the plaintiff, aged about 48, was walking along the sidewalk on Front street at or near the northeast corner of Front and Jasper streets, Philadelphia, when one of defendant's street cars left the rails in the street, dashed across the sidewalk and crushed plaintiff through the plate glass show window of a business establishment. Her injuries were very serious and are permanent.

Appellant's contention is that the judgment is so excessive as to require this Court to reduce the amount of the verdict still further. At the oral argument counsel for plaintiff said he would not have filed the remittitur if he had not been under the impression that no appeal would be taken.

In this case we cannot hold that there was abuse of discretion in the action of the learned court below. Perhaps the best statement in support of the action of the court is that contained in the opinion filed by President Judge OLIVER, from which we quote the following: "At the conclusion of the trial, defendant's counsel asked for an exception to that portion of the charge dealing with 'present worth.' He was asked to state specifically the basis for his objection, as the Trial Judge indicated all the parties 'did not want any error in the charge.' Counsel then, with the jury listening attentively, stated how he thought present worth should be ascertained. The Trial Judge then stated to the jury that they had heard counsel, and that what counsel had said, respecting present worth, should be accepted by

the jury as a correct statement of the law. Counsel for the defendant was apparently entirely satisfied, for he asked for no exception to that instruction.

"Other than the above, there were only two exceptions to the charge. First, counsel asked for an exception 'to the inclusion of the first year's loss of wages as an element of damage,' and, secondly, he asked for a general exception. It is apparent, therefore, that this trial was as free from error as it is humanly possible for any jury trial to be. . . .

"Plaintiff was a woman of unusually fine character, appearance and personality. . . .

"Her right leg was so badly mashed that it hung by a thread and had to be amputated below the knee. The back of her left leg was severely gouged by the plate glass. At the hospital it was found that considerable portion of the flesh had to be removed, along with the dirt, from this open wound. In amputating the lower portion of the left [right] leg, the doctors endeavored to save as much of the bony stump as possible, so as to make walking with the stump more easy. For that reason they were compelled to make a number of skin grafts over the stump, taking the skin from other portions of the plaintiff's body. They also had to graft over the long wound at the back of the right thigh, again taking skin for that purpose from other portions of the plaintiff's body. On several occasions the skin grafts over the stump blistered, causing additional pain and suffering to the plaintiff and delaying her return to work. She was unable to do any work at all for a period of one year.

"Plaintiff suffered a considerable loss of power in the left leg. As a result of the destruction of tissue and interference with the venous circulation there has been, and will continue to be, rather constant swelling and disability in that leg. Her right leg also causes considerable trouble. She can not stand on it for any period

of time, and she can not do any work which requires normal use of that leg. She can not now do any heavy work around the house, and has to confine her activities primarily to such matters as washing or drying dishes or sewing—occupations in which she can sit down and perform the work.

"Plaintiff obviously suffered considerable pain. The testimony also established that she will have a substantial amount of pain for the rest of her life. In addition, she will have the inconvenience of walking about on an artificial limb on a stump that has never healed, and with her other leg partially disabled.

"Her expenses were approximately $1,594; her loss of wages, including board and keep, amounted to $30 a week, or a total of $1,500 additional."

We are justified in adopting that language which requires affirmance of the judgment.

Judgment affirmed.