Rockingham,
No. 4678.

ARTHUR KILFOYLE CO. *v.* EMANUELE J. MALATESTA.

Argued December 2, 1958.

Decided December 31, 1958.

*Robert Shaw* and *Robert B. Donovan* (*Mr. Shaw* orally), for the plaintiff.

*Burns, Calderwood, Bryant & Hinchey (Mr. Bryant* orally), for the defendant.

DUNCAN, J. The evidence disclosed that the plaintiff, who was a resident of Cambridge, Massachusetts, and the defendant's son-in-law, undertook to construct the foundation, and to lay the cinder-block walls and partitions, of a motel which the defendant proposed to erect in Northwood. The plaintiff testified that after making suggestions concerning changes in the plans for the structure, he commenced work at Northwood on April 19, 1954, continuing until October 31, 1954. According to his testimony he worked on a total of 126 days during this period, his work after August 15, 1954, being on week ends only. No record of hours was kept but the plaintiff testified that "some days it was eight [hours] and other days it was ten and other days it was twelve." He estimated his "average" daily hours at eight, and testified with regard to his work on week ends that eight hours a day was a "minimum." There was other evidence that he customarily worked from eight in the morning until dark with little time out for lunches.

The plaintiff was a bricklayer by trade. Prior to commencing work for the defendant, he had been employed as a shop superintendent by a Boston contracting firm at a wage of $3.25 an hour for a five-day week, with overtime pay of $54 a day. He testified that the defendant promised to pay him "a week's pay," but that he had received only $360 on account of the work done.

The defendant did not dispute that the plaintiff had laid the cement-block foundation, the cinder-block walls and partitions, and six concrete floors. However, the defendant took sharp issue with his claim that he had supervised and assisted with the carpentry, denied that he commenced work before April 27, and testified that he had been paid in full by payments totalling $800.

The plaintiff's claim as outlined on the blackboard in the course of his direct examination was for a balance of $2,916, after crediting $360 paid. This figure was reached by determining that the total days worked was 126, and computing the amount due on the basis of an eight-hour day at an hourly rate of $3.25. The effect of the remittitur was to reduce the verdict to the amount thus claimed by the plaintiff in his testimony.

The defendant's motion to set the verdict aside alleged as grounds therefor that the verdict was against the weight of the evidence, and that "the jury fell into a plain mistake in that the

verdict is far in excess of the damages asked for by the plaintiff during the trial." In support of its exception the defendant argues that the verdict must have been computed at a rate of $3.25 an hour for an average day of "slightly over ten hours"; that there was no evidence that plaintiff's work-day averaged ten hours; and that the verdict was manifestly so excessive as to show partiality, prejudice, or mistake on the part of the jury, and unfairness in the trial. With respect to the weight of the evidence the defendant argues that compensation at an hourly rate exceeding $2.75 was unwarranted.

The direct conflicts in the testimony of the parties could be resolved only by the findings of the triers of the facts. Upon the question of an hourly rate at which the plaintiff was entitled to be paid the only evidence, apart from the plaintiff's testimony that he received pay of $3.25 an hour elsewhere, was testimony by a Northwood plumber and steamfitter that the "going price" for the hiring of "capable men in Northwood, in this vicinity" was $2.75 an hour. Since the nature of the work which commanded this pay for "capable" men did not appear, the jury was not required to adopt the defendant's evidence as a conclusive measure of the fair value of the plaintiff's labor. If the verdict was in fact based upon an hourly rate of $3.25 it was not against the weight of the evidence on that account. Although the plaintiff did not testify that he worked an average of ten hours a day, there was other evidence from which the jury could find that he did. A finding that the verdict was against the weight of the evidence, or that it was so excessive as to show partiality or prejudice was not required by the record. See *Young* v. *Dow,* 93 N. H. 210.

It is not the practice in this state to require a retrial of issues as to which no error has been committed, if they can be separated from issues as to which error did occur. *Moulton* v. *Langley,* 81 N. H. 138. "If the verdict is wrong in giving too large damages, this error does not vitiate the verdict when the excess can be ascertained so that the bad may be severed from the good. The bad may be cut off by a *remittitur,* and the verdict saved." *Doe,* J., in *Lisbon* v. *Lyman,* 49 N. H. 553, 583.

The order of the Trial Court, entered upon the motion alleging that the jury's mistake consisted of returning a verdict in excess of the amount claimed by the plaintiff at the trial, implied a finding that the mistake did not extend to other issues but consisted only of the excessive amount. The defendant's exception raises the

issue of "whether there was evidence to support the Court's finding that the [mistake] of the jury was due to a cause which did not affect the question of liability." *Moulton* v. *Langley, supra,* 139.

The Trial Court's finding was warranted by the record. In final argument plaintiff's counsel asserted that his average work-day "could be ten hours" and that "if" he wanted to "make it rough," another $1,000 "should" be added to the figure on the board "for those extra hours he put in that he is not making any charge for." The Court below could reasonably find that this assertion led the jury to return a verdict for more than the plaintiff had claimed to be entitled to. But as was said in *Turek* v. *Pennsylvania Railroad,* 361 Pa. 512, 518, the fact that the jury miscalculated the damages "does not . . . reflect on its ability to determine liability." The implied finding by the Court that although the verdict mistakenly exceeded the plaintiff's claim, the trial was otherwise fair (*Davis* v. *Company,* 100 N. H. 12, 16) might reasonably be made.

In such circumstances, "where a verdict has been returned for a sum in damages too large, but the excess can be readily computed, and the plaintiff will remit the same, the verdict will not be set aside." *Cram* v. *Hadley,* 48 N. H. 191, 195. See also, *Tuck* v. *Insurance Co.,* 56 N. H. 326, 331; *Sanborn* v. *Emerson,* 12 N. H. 57, 67. "The consideration of the defendant's motion involved questions of fact for the Judge and his decision should not be set aside unless no reasonable person would make it. *Wisutskie* v. *Malouin,* 88 N. H. 242, 246." *Roy* v. *Chalifoux,* 95 N. H. 321, 324.

*Exceptions overruled.*

BLANDIN, J., was absent; the others concurred.