Marie V. **KEYES**

v.

**NATIONAL RAILROAD PASSENGER CORPORATION, et al.**

**Civ. A. No. 90–0607.**

United States District Court,
E.D. Pennsylvania.

Feb. 6, 1991.

Joseph P. Mylotte, Media, Pa., for plaintiff.

David E. Faust, Philadelphia, Pa., for defendants.

**1.** Conrail is no longer a party to this action pursuant to a Stipulation of Dismissal (Document No. 9).

## MEMORANDUM

LOWELL A. REED, Jr., District Judge.

Plaintiff Marie Keyes brought this civil action against Consolidated Rail Corporation (Conrail)[1] and National Railroad Passenger Corporation (Amtrak) seeking damages for injuries she sustained from a slip and fall on ice and snow when boarding defendant's train.[2]

Before me is the motion of defendant Amtrak for summary judgment. For the reasons set forth below, the motion of defendant Amtrak shall be granted.

## I. FACTUAL BACKGROUND

The material facts of this case are not in dispute. On January 11, 1988, plaintiff was boarding defendant's train when she slipped and fell on "hills and ridges of ice and snow". Complaint ¶ 7. Plaintiff asserts that the accident was caused solely by the negligence of defendant, its servants, agents, and/or employees. Complaint ¶ 9. Plaintiff alleges, among other things, that defendant Amtrak negligently permitted the snow and ice to accumulate creating a hazardous situation, failed to warn passengers of the dangerous situation, failed to inspect and maintain the boarding area, and failed to use due care. Complaint ¶ 8.

Defendant asserts, and it is not disputed, that at the time of the accident, plaintiff had used her Rail Travel Privilege Card and obtained her Amtrak ticket at no cost. *See* Memorandum in Support of Defendant's Motion for Summary Judgment at 2 [hereinafter Defendant's Memorandum]. Defendant argues that the limitation on liability provision contained on the mailer to the free pass bars plaintiff from any recovery.

## II. DISCUSSION

■ Under the Federal Rule of Civil Procedure 56(c), summary judgment may be

**2.** This action was originally brought in the Philadelphia County Court of Common Pleas, December term, 1989 and defendant removed to this court based upon 28 U.S.C. § 1331 and 28 U.S.C. § 1441.

granted when, "after considering the record evidence in the light most favorable to the non-moving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 340–41 (3d Cir.1990). For a dispute to be "genuine", the evidence must be such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir.1989).

■■ The burden of demonstrating the absence of genuine issues of material fact is initially on the moving party regardless of which party would have the burden of persuasion at trial. *First Nat'l Bank v. Lincoln Nat'l Life Ins. Co.*, 824 F.2d 277, 280 (3d Cir.1987). Following such a showing, the non-moving party must present evidence through affidavits or depositions and admissions on file which comprise of a showing sufficient to establish the existence of every element essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). To establish a genuine issue of material fact, the non-moving party must introduce evidence beyond the mere pleadings to create an issue of material fact on "an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. If that evidence is, however, " 'merely colorable' or is 'not significantly probative,' summary judgment may be granted." *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.*, 812 F.2d 141, 144 (3d Cir.1987) (quoting, in part, *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11).

*A. Free Pass*

■ The Supreme Court has held that free passes and related conditions issued by interstate carriers are governed by federal law. *See Francis v. Southern Pac. Co.*, 333 U.S. 445, 68 S.Ct. 611, 92 L.Ed. 798 (1948). Conversely, free passes relating to wholly intrastate travel are governed by state law. *See N.Y. Cent. R.R. Co. v. Mohney*, 252 U.S. 152, 155, 40 S.Ct. 287, 288, 64 L.Ed. 502 (1920). This is a critical distinction for plaintiff Keyes because under Pennsylvania law provisions limiting liability have been declared void against public policy, while similar provisions have been enforced under federal law. Plaintiff Keyes asserts in her brief that she was traveling intrastate at the time of the accident and, therefore, Pennsylvania law, and not federal law, should govern this case.

■ In determining whether a plaintiff was traveling intrastate or interstate, federal courts have considered the character of the train, that is whether it is confined within one state, and the nature of the pass. In *N.Y. Central Railroad v. Mohney, supra*, the Supreme Court found state law controlling when an employee was injured on a railroad using a pass that was good only for a train line wholly within Ohio and it was irrelevant that he intended to travel outside Ohio. In *Olsen v. Draper*, 112 F.Supp. 859 (E.D.N.Y.1953) the court held that riding on the Long Island Rail Road was necessarily intrastate in character because the train only traveled within Long Island. In other cases applying federal law it was clear that the injured party was on an interstate journey, *see Francis, supra; Kansas City Southern Railway Co. v. Van Zant*, 260 U.S. 459, 43 S.Ct. 176, 67 L.Ed. 348 (1923), riding on an interstate carrier. *See Thompson v. Nat'l Railroad Passenger Corp.*, 621 F.2d 814 (6th Cir.1980) (applied federal law to case arising out of Amtrak derailment causing injuries to plaintiff using a gratuitous pass).

■ In the instant case I find that federal law is controlling. Amtrak is an interstate carrier and plaintiff's pass entitled her to travel among the several states. Although plaintiff argues in her brief that she was traveling intrastate, she has not provided any affidavits to support this assertion and her complaint clearly states the contrary. In her complaint plaintiff alleges,

17. At the time and place hereinafter mentioned, and for a long time prior thereto, the defendant ... operated ... trains carrying passengers ... in commerce between the different states of the United States and its territories.

18. At the time and place hereinafter mentioned, the plaintiff and defendant were *engaged in interstate commerce* between the different states of the United States and its territories.

Complaint ¶¶ 17–18 (emphasis supplied).[3]

In addition, defendant argues, and I am persuaded, that the application of federal law is compelling in this case because of Amtrak's status as an interstate carrier and federal corporation. *See* 45 U.S.C. § 501, *et seq.* (1988). Amtrak is a federal corporation and distributes similar passes throughout the country. If state law was applied, a significant disparity as to the rights and duties of Amtrak would arise based upon which state it was traveling through at the time of an occurrence. This difference would place a burden on interstate commerce and would result in certain unfairness to particular litigants who would be barred from recovery in one state while other claimants with identical claims and contracts could recover in another state. It is this type of situation which warrants a uniform rule, and in this case it is the federal law that must apply.

■ The Supreme Court has consistently upheld provisions of gratuitous passes which released railroads from liability due to negligence. *Francis, supra; Kansas City Southern Railway Co., supra; Boering v. Chesapeake Beach R.R. Co.,* 193 U.S. 442, 24 S.Ct. 515, 48 L.Ed. 742 (1904); *Northern Pac. R.R. Co. v. Adams,* 192 U.S. 440, 24 S.Ct. 408, 48 L.Ed. 513 (1904).[4] Since plaintiff Keyes provided no compensation for her pass she received a gratuity and is subject to the related conditions. Plaintiff is therefore barred, as a matter of law, from recovering against Amtrak for ordinary negligence.[5]

## B. *Reasonableness*

Plaintiff alternatively argues that even if federal law applies, summary judgment should be denied because there is an issue as to whether the provision was reasonable. Plaintiff argues that in cases upholding limitations on liability, the provision was written either on the pass or on the ticket or the passenger had to sign for the ticket. In this case the provision was contained in the inside portion of the mailer in which the pass was sent. *See* Defendant's

3. Plaintiff urges this court to adopt the reasoning and result in *Turek v. Pennsylvania R.R. Co.,* 361 Pa. 512, 64 A.2d 779 (1949). In that case the Supreme Court of Pennsylvania found that although the employee may have been using his interstate pass when the fatal accident occurred, the evidence was clear that he was traveling intrastate and therefore Pennsylvania law was controlling. The facts in that case, however, were considerably more clear as to the boundaries of the decedent's journey than in this case. Furthermore, this court is bound by the applicable decisions of the Court of Appeals for the Third Circuit and the Supreme Court. In as much as the Supreme Court in *Mohney* rejected the plaintiff's intentions as a basis for determining whether travel was interstate or intrastate, I am compelled to grant less weight to plaintiff's intentions in this case, especially in light of the contradictions in the. record.

4. After the early supreme court decisions in *Boering* and *Northern Pacific,* Congress passed the Hepburn Act, 49 U.S.C. § 1(7) preempting the issue of free passes in interstate commerce. *See Thompson,* 621 F.2d at 820. The Act prohibited issuing free passes except to specific classes of people and Supreme Court decisions that had upheld provisions limiting liability were considered part of the Act. *See id.,* citing, *Francis,* 333 U.S. at 449–50, 68 S.Ct. at 613–14, and *Charleston & Western Carolina R.R. Co. v. Thompson,* 234 U.S. 576, 34 S.Ct. 964, 58 L.Ed. 1476 (1914). That section of the Hepburn Act, among others, has since been repealed and is now contained in 49 U.S.C. §§ 10721–10724 (1988).

5. Plaintiff cites to footnote 3 in *Thompson,* 621 F.2d at 822 for the proposition that waiver of liability provisions have undergone "considerable transformation" since the original Supreme Court decisions. Although it is true that the original opinions on this point were written over 80 years ago, as the rest of the footnote states, the Supreme Court had the opportunity to reexamine the issue in *Francis* but did not change the rule. In addition, as footnote 3 suggests, and I agree, although the concept that waiver of liability provisions may indeed be against public policy for various reasons I will not elaborate on at this time, I am nevertheless bound by the law set forth by the Supreme Court and am not free to declare otherwise.

Memorandum Exhibit E. Plaintiff stated that she never observed or read any conditions contained in the mailer and at no time during the use of her card was she ever advised of the condition relieving Amtrak from liability. Therefore, plaintiff argues, there was no meeting of the minds to create a binding contract. Affidavit of Marie Keyes attached to Plaintiff's Memorandum in Opposition to Summary Judgment Exhibit A.

■ Since courts have never applied a reasonableness standard when upholding liability release provisions of gratuitous train passes, I am not legally bound to do so here. I will, nevertheless, consider the issue because plaintiff has raised a distinction between the exculpatory clause in her case and in other railroad cases. I turn to an analogous situation, involving federal law of sea-going carriers, as a guide for determining what is reasonable in this case. Pursuant to a federal statute, sea-going vessels may limit their liability to suits brought within one year from the date of injury. *See Strauss v. Norwegian Caribbean Lines, Inc.*, 613 F.Supp. 5, 7 (E.D.Pa. 1984). In order to avail themselves of shortened limitations period, such carriers must make reasonable efforts to bring the contract terms to the attention of the passenger. *Id.* The "reasonable communicative" standard is whether the carrier " 'had done all it reasonably could do to warn the passenger that the terms and conditions were important matters of contract affecting his legal rights.' " *Id.*, quoting, *Silvestri v. Italia Societa per Azioni di Navigazione*, 388 F.2d 11, 17 (2d Cir.1968). Whether this standard has been met is a question of law. *Id.*, citing, *Barbachym v. Costa Line, Inc.*, 713 F.2d 216, 218 (6th Cir.1983); *See also Mary and Joseph Tareila v. Scandinavian World Cruises (Bahamas) Ltd.*, No. 84–5626, slip op., 1985 WL 3773 (E.D.Pa. November 14, 1985). There is no question as to the location of the provision or the contents of the provision. The remaining issue, then, under this theory, is whether plaintiff was reasonably notified of the terms of the pass.

The conditions to the free pass were written on the mailer's inside front cover surrounded by a pink border. *See* Defendant's Memorandum Exhibit E. In large print in black ink on a white background the mailer reads as follows,

RAIL TRAVEL PRIVILEGE CARD
(PASS) CONDITIONS OF USE

KEEP THIS CARD FOR FUTURE REFERENCE IT CONTAINS VALUABLE INFORMATION CONCERNING USE OF YOUR RAIL TRAVEL PRIVILEGE CARD (RTPC)

Following that heading are three columns containing a total list of twenty-one conditions. The first two columns contain five conditions each, and the third column contains eleven conditions. All the conditions are numbered and printed in black ink on white paper in a type face considerably smaller than the above quoted heading. At the end of the third column is provision in question, condition twenty-one, which reads as follows:

The user of free or reduced-rate transportation expressly assumes all risk of personal injury or death, loss of or damage to property and delay in connection with this transportation and relieves Amtrak or its agents from all liability therefore.

The card itself is attached by glue to the inside of the back cover and the front and back portions of the mailer are glued together. In order to obtain the card inside the mailer it is necessary to tear along the perforated edges and peal apart the front and back portions. In this process of pealing apart the mailer the conditions stated thereon become obvious. The heading is conspicuous and clearly states that valuable information is contained on the mailer and it should be retained for future reference. The rest of the print is indeed smaller but clearly legible. The fact that the provisions are on the mailer and not the actual pass does not make the communication unreasonable when the conditions are so physically obvious when the mailer is pealed apart. It is not unusual for courts to find a passenger bound by the terms of

a contract even when she has not read them. *See Strauss*, 613 F.Supp. at 8 (and cases cited therein). Accordingly, I find, as a matter of law, plaintiff was reasonably notified of the conditions for use of the rail travel privilege card and is bound by them.

## III. CONCLUSION

I conclude that federal law is applicable and the provision limiting liability is enforceable thereunder and plaintiff was reasonably notified of such condition. There remains no genuine issue of material fact and defendant Amtrak is entitled to judgment as a matter of law. Accordingly, the motion of defendant Amtrak for summary judgment shall be granted.