Steven A. **SCHWARTZ**

v.

**COUNTY OF MONTGOMERY, Board of Commissioners of Montgomery County, Montgomery County Prison Board, Lawrence Roth, in his official and personal capacities.**

Civ. A. No. 92–CV–1552.

United States District Court, E.D. Pennsylvania.

June 4, 1993.

---

Eric B. Schnurer, Jerome M. Marcus, Berger & Montague, P.C., Philadelphia, PA, for plaintiff.

George B. Ditter, Jenkins, Tarquini & Jenkins, Ambler, PA, for defendant.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

The parties in the instant civil rights action have filed cross-motions for summary judgment on the grounds that the record in this matter now reflects that no material issues of fact remain and that they are each entitled to the entry of judgment in their favor as a matter of law. For the reasons set forth below, the motions are denied.

## I. HISTORY OF THE CASE

The history of this case may be quickly recited in the following manner. On July 16, 1990, the Plaintiff, Steven A. Schwartz, was temporarily transferred from the Raybrook, New York, Federal Correctional Institution, where he was serving a sentence for bank fraud, to the Montgomery County Prison in Norristown, Pennsylvania to await attendance at a Post–Conviction Hearing Act hear-

ing. Approximately one week later, on July 24, 1990, the Plaintiff was suddenly and violently attacked and assaulted, apparently without provocation, by another inmate, one Brian K. Sanders thereby suffering severe abrasions to his neck, chin and eye areas and contusions to his elbows. Unbeknownst to Plaintiff, Mr. Sanders had a long history of violent and assaultive behavior both within and outside of the prison and juvenile justice systems.

On the day immediately preceding his attack on plaintiff Schwartz, Brian Sanders had appeared before Montgomery County Common Pleas Court Judge Stanley Ott to be sentenced for the September, 1989 rape and aggravated assault of a fellow inmate at the very same Montgomery County Prison facility. That offense had been Mr. Sanders' ninth conviction for rape, most of which had involved "various and sundry weaker young male patients and/or inmates at various state institutions." In sentencing Mr. Sanders to the maximum terms permitted under the Pennsylvania state sentencing guidelines, Judge Ott observed that he was "a most dangerous man ... a predator ..." and recommended that "this very dangerous criminal be segregated as much as possible from all other inmates in whatever institution he is sent to."

Additionally, Sanders disrupted the court proceedings by refusing to stand voluntarily for his sentencing and knocking over the counsel table at which he had been sitting requiring several sheriff's deputies to physically subdue him.

As a consequence of this assault by Sanders, Plaintiff brought this lawsuit against the Montgomery County Prison, its warden, governing board,[1] the County itself and the Montgomery County Commissioners for monetary damages, costs and counsel fees. Specifically, Plaintiff alleges that the Defendants' failure to segregate Sanders from the

---

1. Although Plaintiff has named the "Montgomery County Prison Board" as a defendant, it appears from the Defendants' pleadings and the record that the proper party defendant is the Montgomery County Prison Board of Inspectors and that it is this body which is primarily responsible for promulgating prison rules and regulations, mak-

ing appointments and generally overseeing the operation of the prison. The members of the Board of Inspectors, in turn, are appointed by the County Board of Commissioners and by the Judges on the Court of Common Pleas of Montgomery County.

general population of the County prison and in thereby affording him the opportunity to assault and injure Plaintiff constitutes a violation of Plaintiff's rights to due process of law and to be free from cruel and unusual punishment under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution and of 42 U.S.C. § 1983. As noted above, Plaintiff now moves for the entry of judgment in his favor as a matter of law on these claims as to the issue of liability. Defendants, in turn, submit that inasmuch as they are immune from suit under the doctrines of absolute and qualified immunity, judgment is properly entered at this time in their favor as a matter of law dismissing Plaintiff's complaint with prejudice.

## II. DISCUSSION

The legal standards and principles to be followed by the district courts in resolving motions for summary judgment are clearly outlined in Fed.R.Civ.P. 56(c), which states in relevant part:

> ... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

In this way, a motion for summary judgment requires the court to look beyond the bare allegations of the pleadings to determine if they have sufficient factual support to warrant their consideration at trial. *Liberty Lobby, Inc. v. Dow Jones & Co.,* 838 F.2d 1287 (D.C.Cir.1988), *cert. denied,* 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988). *See Also: Aries Realty, Inc. v. AGS Columbia Associates,* 751 F.Supp. 444 (S.D.N.Y.1990).

As a general rule, the party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a summary judgment motion, the court must view the facts in the light most favorable to the party opposing the motion and all reasonable inferences from the facts must be drawn in favor of that party as well. *U.S. v. Kensington Hospital,* 760 F.Supp. 1120 (E.D.Pa. 1991); *Schillachi v. Flying Dutchman Motorcycle Club,* 751 F.Supp. 1169 (E.D.Pa. 1990).

Where, however, a disagreement exists over what inferences can be reasonably drawn from the facts even though those facts may be undisputed, summary judgment is inappropriate and should not be granted. *See: Nathanson v. Medical College of Pennsylvania,* 926 F.2d 1368, 1380 (3rd Cir.1991); *Santiago v. Temple University,* 739 F.Supp. 974, 977 (E.D.Pa.1990).

This is not to say, however, that a non-movant may rest upon the allegations contained in his or her pleadings in defense of a summary judgment motion. *See: Allen v. Denver Public School Board,* 928 F.2d 978 (10th Cir.1991). Indeed, Fed.R.Civ.P. 56(e) provides:

> "When a motion for summary judgment is made and supported as provided for in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

In other words, the burden of demonstrating the absence of genuine issues of material fact is initially on the moving party regardless of which party would have the burden of persuasion at trial. Following such a showing, the non-moving party must present evidence through affidavits or depositions and admissions on file which comprise of a showing sufficient to establish the existence of every element essential to that party's case. *Celo-*

*tex Corp. v. Catrett, supra,* 477 U.S. at 321–323, 106 S.Ct. at 2552–2553; *Keyes v. National Railroad Passenger Corp.,* 756 F.Supp. 863 (E.D.Pa.1991); *Applications Research Corp. v. Naval Air Development Center,* 752 F.Supp. 660 (E.D.Pa.1990).

Preliminarily, Defendants assert that it is unclear from the Plaintiff's complaint, as presently framed, whether they are being sued in their official or in their personal capacities. To the extent that the suit is intended to impose liability against Defendants on an official basis, they assert that the law bars such an imposition where, as here, the acts complained of were those of an agent. In the event that Plaintiff seeks to hold them personally liable, Defendants submit that those claims are barred by virtue of the doctrines of absolute and/or qualified immunity. The Plaintiff, in turn, takes the position that those defenses do not apply and that since the record establishes that the Defendants knew of Mr. Sanders' violent propensities, he is entitled to judgment in his favor on the issue of liability.

■■■ As a general rule, liability against a governmental entity cannot attach under 42 U.S.C. § 1983 under the theory of respondeat superior but must be founded upon evidence that the government unit(s) itself supported a violation of constitutional rights. Thus, municipal liability attaches only when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury. *Bielevicz v. Dubinon,* 915 F.2d 845, 850 (3rd Cir.1990) citing *Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2036–2038, 56 L.Ed.2d 611 (1978). A government policy or custom can be established in two ways. Policy is made when a "decision-maker possessing final authority to establish municipal policy with respect to the action" issues an official proclamation, policy or edict. *Pembaur v. Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986). A course of conduct is considered to be a "custom" when, though not authorized by law, such practices of state officials [are] so permanent and well settled as to virtually constitute law. *Andrews v. City of Philadel-*

*phia,* 895 F.2d 1469, 1480 (3rd Cir.1990). In either of these cases, it is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom and to demonstrate a plausible nexus or affirmative link between the municipality's policy or custom and the specific deprivation of the constitutional rights at issue. *Bielevicz v. Dubinon, supra,* 915 F.2d at 850; *Andrews v. City of Philadelphia, supra,* 895 F.2d at 1480 citing *Jett v. Dallas Independent School District,* 491 U.S. 701, 736, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989). *See Also: Colburn v. Upper Darby Township,* 838 F.2d 663, 671 (3rd Cir.1988); *Estate of Bailey by Oare v. County of York,* 768 F.2d 503, 507 (3rd Cir. 1985).

■■■ The doctrine of immunity from suit can come in several forms in the arena of constitutional and/or civil rights law. Absolute immunity attaches to all actions performed in an official, legislative, or quasi-judicial capacity. Indeed, it is only with respect to the legislative powers delegated to them by the state legislatures that the members of local governing boards are entitled to absolute immunity. *Ryan v. Burlington County, New Jersey,* 889 F.2d 1286, 1290 (3rd Cir.1989).

■■■ In determining whether absolute immunity is available for particular actions, the courts engage in a "functional" analysis of each alleged activity. *Kulwicki v. Dawson,* 969 F.2d 1454, 1463 (3rd Cir.1992) citing *Harlow v. Fitzgerald,* 457 U.S. 800, 811, 102 S.Ct. 2727, 2734, 73 L.Ed.2d 396 (1982) and *Rose v. Bartle,* 871 F.2d 331, 343 (3rd Cir. 1989). In this regard, the Third Circuit has enunciated a two part test for determining whether an act may be regarded as legislative for immunity purposes. First, the act must be "substantively legislative," (or legislative in character). Second, the act must be "procedurally legislative," that is, passed by means of established legislative process. *Ryan v. Burlington County, supra,* 889 F.2d at 1290–91; *Brown v. Smythe,* 780 F.Supp. 274, 277 (E.D.Pa.1991). Other factors to consider in determining whether absolute immunity should be given for a particular function include (1) whether there is a historical or

common law basis for the immunity in question; (2) whether performance of the function poses a risk of harassment or vexatious litigation against the governmental body or official; and (3) whether there exist alternatives to damage suits against the governmental body or official as a means of redressing wrongful conduct. *Kulwicki v. Dawson, supra*, 969 F.2d at 1463; citing *Mitchell v. Forsyth*, 472 U.S. 511, 521–22, 105 S.Ct. 2806, 2812–13, 86 L.Ed.2d 411 (1985) and *Fry v. Melaragno*, 939 F.2d 832, 836, n. 6 (9th Cir. 1991).

 Qualified immunity is the more limited type of immunity and generally protects governmental officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Winn v. Lynn*, 941 F.2d 236, 239 (3rd Cir.1991). Clearly established rights are those with contours sufficiently clear that a reasonable official would understand that what he is doing violates those rights. Thus, while a plaintiff need not show that the very action in question has previously been held unlawful, he needs to show that in light of preexisting law, the unlawfulness was apparent. *Shea v. Smith*, 966 F.2d 127, 130 (3rd Cir.1992).

At bar, the gravaman of Plaintiff's complaint is that the Defendants violated his constitutional right to be free from cruel and unusual punishment by failing to segregate inmate Sanders, whom they knew or should have known was an extremely dangerous and violent individual, from the general prison population at all times. To be sure, the law in this area clearly evinces that Mr. Schwartz has stated an actionable claim in that it has repeatedly been held that the Eighth Amendment affords an inmate a right to be protected from violence inflicted by other inmates. *Young v. Quinlan*, 960 F.2d 351,

361 (3rd Cir.1992); *Riley v. Jeffes*, 777 F.2d 143, 145 (3rd Cir.1985).

 To prove such a claim, an inmate must prove both an objective element—that the deprivation was sufficiently serious and a subjective element—that a prison official acted with a sufficiently culpable state of mind. Where the alleged Eighth Amendment violation concerns a prisoner's conditions of confinement or protection afforded him against other inmates, the requisite state of mind is that of deliberate indifference. *Wilson v. Seiter*, ——— U.S. ———, ———, 111 S.Ct. 2321, 2326, 115 L.Ed.2d 271 (1991); *Young v. Quinlan, supra*, 960 F.2d at 360.[2] The objective component of an Eighth Amendment claim, on the other hand, is contextual and responsive to contemporary standards of decency. Accordingly, there is no requirement that a plaintiff sustain some arbitrary quantity of injury in order to maintain a suit for relief. *Hudson v. McMillian*, ——— U.S. ———, ———, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992).

 Applying all of the foregoing principles to the case at bar and viewing the record in the light most favorable to the non-moving parties, we find that material issues of fact exist as to (1) whether the Defendants had a custom or policy of permitting dangerous, violent inmates to mingle with the general population at the Montgomery County Prison; (2) whether the Defendants knew or should have known that Brian Sanders presented a danger or threat to other inmates at the prison; (3) whether the performance of the Defendants' duties in managing and overseeing and appointing individuals to manage and oversee the operation of the Montgomery County Prison was part and parcel of an official, legislative or quasi-judicial function so as to invoke the immunity doctrines; and (4) whether the Defendants' conduct in managing, overseeing, etc. the operation of the prison violated Plaintiff's clearly established constitutional rights. Indeed, the parties' pleadings and affidavits themselves indicate

**2.** According to footnote 22 to the Third Circuit's decision in *Young*, "deliberate indifference" has been variously described as: the possession of "actual knowledge of impending harm, easily preventable, so that a conscious, culpable refusal to prevent harm could be inferred from a failure to prevent it," "the infliction of unnecessary suffering," as the "unnecessary and wanton infliction of pain," and as the "knowledge of a pervasive risk of harm to inmates from other prisoners" and failure to respond reasonably to the risk . . .: (citations omitted)

that the Defendants had, at a minimum, some constructive knowledge that Brian Sanders was classified as a maximum security inmate, that Mr. Sanders was temporarily being housed at the Montgomery County Prison as the result of his July 23, 1990 sentencing before Judge Ott for the September, 1989 rape and aggravated assault of an inmate in their prison facility and that it was Mr. Sanders' ninth rape conviction. The record further reflects that the Defendants had at least constructive knowledge that Brian Sanders had severely disrupted the courtroom proceedings at his sentencing hearing and that Judge Ott had recommended that Sanders be segregated as much as possible from all other inmates in whatever institution to which he is eventually sent.

In addition, while it is also clear that Pennsylvania law mandates that all prisoners have at least two hours of physical exercise daily, in the open (weather permitting) or indoors (in inclement weather), it is *not* clear why Mr. Sanders was apparently permitted to take his two hours of physical exercise in the prison's "TV room" with the other prisoners. It is likewise unclear who decided to permit Mr. Sanders to exercise in that fashion and in that forum and whether such action constituted a policy or custom. Obviously then, summary judgment cannot be entered in favor of either party at this time. Both the Plaintiff's and the Defendants' motions are therefore denied.