**Willie BAKER, Plaintiff**

v.

**Joseph D. LEHMAN, et al., Defendants.**

**Civil Action No. 94–3665.**

United States District Court,
E.D. Pennsylvania.

June 28, 1996.

Ann E. Kim, Francois A. Dutchie, Blank Rome Comisky and McCauley, Philadelphia, PA, for Plaintiff.

Brian K. Wiley, Esq., Office of Attorney General, Philadelphia, PA, for Defendants.

## MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

The plaintiff, Willie Baker, a prisoner in the State Correctional Institution at Graterford (hereafter "Graterford"), originally brought this suit pursuant to 42 U.S.C. § 1983, *pro se*, against six defendants: Joseph D. Lehman, Commissioner of Corrections for the Commonwealth of Pennsylvania; Donald T. Vaughn, Superintendent of Graterford; William Winder, Deputy Superintendent for Facility Management at Graterford; Thomas Stachelek, Deputy Superintendent of Treatment at Graterford; Joseph Stever, Director of Correctional Industries for the Commonwealth of Pennsylvania; and Marvin Cunningham, Manager of Correctional Industries at Graterford. Baker alleged these

defendants were deliberately indifferent to his Eighth Amendment right to personal safety by failing to protect him from an attack by another inmate. I granted the plaintiff's motion for appointment of counsel, discovery proceeded, and the defendants filed a motion for summary judgment. Soon thereafter, the plaintiff filed a motion to join three additional defendants: Vincent McFadden, Supervisor of the Correctional Industries Clothing Shop at Graterford; Lt. Ismael Soler, an Internal Security Corrections Officer at Graterford; and Francis J. Feild, a Corrections Counselor at Graterford. This memorandum addresses the motion for summary judgment of the six original defendants, and when I use the term "defendants" in this memorandum, it refers only to those six. I will grant the motion as to the original defendants only, since neither side has had the opportunity to argue the motion as to the three new defendants.

## BACKGROUND

On June 18, 1992, Willie Baker was attacked by another Graterford inmate, Anthony Jones, in the prison clothing shop, where they both worked. Jones used a pair of scissors ten or twelve inches long, an instrument that was provided to almost every inmate who worked in the shop. (Baker deposition transcript (hereafter "Baker dep.") at 98; McFadden dep. at 120–21.) With them, he stabbed Baker multiple times in the chest. (Plaintiff's memorandum in opposition (hereafter "P's memo"), Exh. A.) Baker's injuries were extremely severe. He was rushed to the hospital, where he remained unconscious for some twenty or twenty-two days. (Baker dep. at 82.)

The defendants seek summary judgment on the grounds that there are no disputed issues of material fact and that their actions do not qualify as deliberate indifference. In opposing the defendants' motion, the plaintiff claims there are disputed issues of material fact as to the defendants' deliberate indiffer-

ence. I will recount here the plaintiff's version of the facts, with some additional uncontested facts that the defendants cite.[1]

Willie Baker told Vincent McFadden, not more than a week before the incident, that Glen Hudson, another inmate, was Anthony Jones' "wife." (McFadden dep. at 73–74.) McFadden was the supervisor of the prison clothing shop, where all three inmates worked. He stated that at that time, "Willie was a husband, he was taking care of Glenn." (*Id.* at 74.) While McFadden had stated earlier that he did not know of any motive for the stabbing, he later testified as follows:

A. Well, I figured there was going to be trouble because of the switch.

Q. I don't understand, the switch?

A. Tony Jones taking over with Glenn where Willie was, I just figured this isn't going to work with these three guys in here, I'm going to have trouble.

(*Id.* at 110)

Francis J. Feild, the Corrections Counselor for the plaintiff, testified that, although Willie Baker had never admitted to him that he was a homosexual, Feild had formed an opinion that Willie Baker was involved in a love triangle. He stated that he had shared his opinion with other staff members. (Feild dep. at 29–31.)

Some 20 months before the stabbing incident, Glenn Hudson had complained of Willie Baker's advances. Hudson's corrections counselor wrote in a memorandum:

Hudson stated that Baker has pressured him for sexual favors since his reception. He stated that it's to the point where he has resorted to carrying weapons, etc., to protect himself from Baker.... Hudson at this point feels the conflict will only continue to escalate, ...

(P's memo, Exh. B.) In addition, more than a year before the stabbing, Glenn Hudson had written to defendant, Superintendent Donald Vaughn, requesting separation from

---

1. In his memorandum, the plaintiff made a number of statements of fact for which he provided no citations to the record. I did not include those facts unless I happened to note them in the record. The defendants, in support of many of their statements of fact, cited "Attachments A–F" to their memorandum. Those attachments comprise a volume over an inch thick. At other times, the defendants cited four or five of the six attachments. I also have included those statements only where I happened to note support for them in the record.

Baker before he hurt or was hurt by someone. (P's memo, Exh. C.) Some four months before the incident, Baker told prison staff that Hudson had a homosexual relationship with an inmate from Chester.[2] (P's memo, Exh. D.) Lt. Ismael Soler, a security officer, testified that Baker and Hudson had an intimate relationship and that Baker was possessive of Hudson. He described the relationship among Baker, Hudson and Jones as a "menage a trois." (Soler dep. at 25.)

The day before the stabbing incident, Glenn Hudson, accompanied by Baker, went to report that Jones had stolen some items from Hudson's cell. (Baker dep. at 88–89; Soler dep. at 16.) Lt. Soler told the plaintiff not to get involved because it could "escalate things," and said to the plaintiff and Hudson, "[I]f you guys start acting out, I'm gonna lock, I'm gonna lock all three of you's up." (Soler dep. at 25.) Hudson asked to be double-locked in his cell for his own protection the night he reported the theft. (Baker dep. at 61–62.) No action was taken to protect the plaintiff, who acknowledges that he did not request protection and did not think he was in danger from Jones. (Baker dep. at 63.) Just before the incident, Baker had responded to Jones' request to speak with him, and after some conversation, during which McFadden told Baker to return to his work station, Baker followed Jones to the latter's work table, where Jones picked up his scissors and stabbed Baker. (Baker dep. at 74–78.)

Inmates seeking employment in the clothing shop were not screened on the basis of the crimes for which they were incarcerated, but their conduct in prison was taken into account. (McFadden dep. at 21–22, 91–95.) Anthony Jones was in prison for murder.[3] He was provided with a pair of ten or twelve inch scissors, as were almost all the other clothing shop workers. (Baker dep. at 98–99; McFadden dep. at 120–21.) They used the scissors only to cut thread. (McFadden dep. at 14.) Supervisor McFadden testified

he could never understand why the prisoners were given ten inch scissors, but that the practice had begun before his time. (McFadden dep. at 120–21.)

There were approximately one hundred fifty inmates working in the clothing shop, and there was only one officer, a fire and safety inspector, maintaining security. (McFadden dep. at 15; Moore dep. at 17.) His job was to make sure there were no fire or other hazards and to see that there were no fights among the inmates. (Moore dep. at 17.) The plaintiff testified he had heard there was another stabbing in the shop thirty years before his injury. (Baker dep. at 73.)

## DISCUSSION

Under Federal Rule of Civil Procedure 56, the court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is "material" if it might affect the outcome of the suit under governing law. *Id.* The moving party bears the initial burden of demonstrating that there are no facts supporting the adverse party's claim, after which the nonmovant must introduce specific, affirmative evidence that there is a genuine issue for trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53. If the nonmoving party fails to make a showing sufficient to establish the existence of an essential element of its case on which it has the burden of proof, the court must grant summary judgment.[4] *Id.* The court must

---

2. Plaintiff states in his memo that Anthony Jones was from Chester, but provides no citation to the record.

3. Plaintiff states in his brief that Anthony Jones was serving a life sentence for the stabbing death

of an individual, but he does not provide a record citation. (P's memo at 12.)

4. The *Celotex* court stated, at 322–323. 106 S.Ct. at 2552–53:

take the evidence, and all reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party in determining whether any triable issues remain. *Country Floors, Inc. v. Gepner*, 930 F.2d 1056, 1060–61 (3d Cir.1991).

■ To establish a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the conduct of which he complains was committed by one acting under color of state law and that it deprived him of rights, privileges, or immunities guaranteed by the Constitution.[5] *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254–55, 101 L.Ed.2d 40 (1988). In challenging conditions of his confinement, the plaintiff is in effect claiming that they constituted cruel and unusual punishment under the Eighth Amendment. *See Rhodes v. Chapman*, 452 U.S. 337, 345, 101 S.Ct. 2392, 2398, 69 L.Ed.2d 59 (1981).

■ The Supreme Court has set two tests that a prisoner must meet to establish an Eighth Amendment claim. *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). The first asks whether his deprivation was sufficiently serious, whether he was denied "the minimal civilized measure of life's necessities." *Id.* at 298, 111 S.Ct. at 2324. Humane conditions of confinement include reasonable efforts to guarantee a safe environment. *Farmer v. Brennan*, 511 U.S. 825, ——, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994). The second test is subjective and asks whether the officials acted with "deliberate indifference" to inmate health or safety. *Id.* at ——, 114 S.Ct. at 1977. The subjective test itself has two prongs, set out in *Farmer v. Brennan*:

> We hold ... that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

511 U.S. at ——, 114 S.Ct. at 1979.

■ The defendants do not contest that the plaintiff's injuries were sufficiently serious to qualify as cruel and unusual punishment. The question is whether the defendants were deliberately indifferent, whether they knew of and disregarded "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at ——, 114 S.Ct. at 1979. To show that, the plaintiff must be able to satisfy the 2-prong test of *Farmer*, that is, he must present evidence (1) that the defendants were aware of facts from which they could infer a substantial risk of serious harm and (2) that the defendants drew that inference.

■ The defendants argue there is no evidence that any of the them knew before the incident "that plaintiff perceived inmates [sic] Jones as a serious threat to his personal safety. As a matter of law, they could not ignore a risk that was not, in fact, perceived." (Defendants' motion for summary judgment at ¶ 3.) The defendants have misstated the test. It is not whether the plaintiff perceived a threat and communicated that perception to the defendants; it is whether the defendants were aware of facts from which they could draw the inference that a substantial risk of serious harm existed, and whether they drew that inference. They could be aware of such facts and draw the necessary inference even if the plaintiff did not tell them he felt threatened. *Farmer*, 511 U.S. at ——, 114 S.Ct. at 1984. The plaintiff may establish the defendants' awareness of the facts and of the risk by reliance on any relevant evidence. *Id.*

> For example, if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been

---

In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

**5.** Defendants do not contest that they acted under color of state law.

exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk." *Farmer,* 511 U.S. at ——, 114 S.Ct. at 1981–82 (quoting from respondent's brief).

Applying those tests to the record in this case, the plaintiff has provided no evidence that any of the defendants besides Vaughn knew of any facts relating to tension among the inmates in question, facts from which an inference of a "substantial risk of serious harm" might be drawn. There is no evidence that Vaughn learned of any such facts in the year before the incident. It is doubtful that anyone could have inferred "an excessive risk" to inmate safety at the time of the incident solely from the letter Hudson wrote Vaughn more than a year earlier requesting separation from Baker to avoid someone's being hurt. But even if that inference could be made, the plaintiff has provided no evidence that Vaughn drew that inference, or that any of the other defendants drew an inference of "excessive risk to inmate health or safety" from the facts he presents.

With respect to the security measures in the clothing shop, *i.e.,* the lack of screening on the basis of prior crimes, the presence of only one guard for 150 inmates, and the availability of the scissors, this evidence is not sufficient to create awareness of a substantial risk of serious harm, given the previous absence of violence in the clothing shop. There was evidence of only one other such incident, thirty years earlier. The plaintiff's evidence does not show that, with respect to the clothing shop, "a substantial risk of inmate attacks was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past,' " such that the defendants "must have known" about it. *Farmer,* 511 U.S. at ——, 114 S.Ct. at 1981.

The plaintiff has failed to show that any of the defendants were aware of facts from which the inference could be drawn that he was in substantial danger of serious harm, or that any of them drew that inference, or that the facts were such that the defendants must have known of the risk. The plaintiff has

therefore failed to make a sufficient showing to establish the existence of deliberate indifference, an essential element of his case on which he has the burden of proof. Consequently, I must grant the defendants' motion for summary judgment.

## CONCLUSION

For reasons that appear in the foregoing, I will grant the motion for summary judgment of the original six defendants. The three defendants that were added after the original defendants had filed their motion for summary judgment remain in the case.