Terrell **FAULCON,** Plaintiff,

v.

**CITY OF PHILADELPHIA,**
et. al., Defendants.

**No. CIV. A. 97–4506.**

United States District Court,
E.D. Pennsylvania.

Sept. 1, 1998.

Michael N. Huff, Philadelphia, PA, for Plaintiff.

Michael R. Resnick, City of Philadelphia, Law Dept. Claims Division, Philadelphia, PA, for Defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

Presently before the Court is Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and Plaintiff's response thereto. Plaintiff's amended complaint sets forth claims variously against the City of Philadelphia, Warden Harry Moore, Lieutenant B. MacDonald, Sergeant Manilla Stidham, Correctional Officer Walter Becoate, and Correctional Officer Ellen Sanford (collectively "Defendants") for failure to protect and provide a safe environment, failure to supervise, failure to train, and other state law claims.[1] Defendants seek summary judgment on all counts of Plaintiff's complaint. For the following reasons, the Motion is Granted as to the federal claims and the state law claims shall be dismissed without prejudice.

## BACKGROUND

On July 10, 1995, Plaintiff, Terrell Faulcon ("Faulcon" or "Plaintiff"), was incarcerated in Philadelphia Industrial Correctional Center ("P.I.C.C.") awaiting trial for homicide charges when he was attacked by John Wayne ("Wayne") who was incarcerated in P.I.C.C. having just been sentenced to death after a murder conviction. Plaintiff and Wayne were both housed in the same cell block and shared the same dayroom with the other inmates in their cell block. Wayne, allegedly in an unprovoked attack, stabbed Plaintiff three times in the back and neck while Plaintiff was using the telephone in the cell block's dayroom. A struggle ensued where Plaintiff attempted to prevent Wayne from stabbing him further. The correctional officers assigned to the unit called the floor response team who responded to break up the fight.

Plaintiff was treated for stab wounds first by P.I.C.C.'s staff and then transported to the Detention Center, where his wounds were thoroughly cleaned and treated. Plaintiff seeks relief claiming that Defendants were deliberately indifferent to the substantial risk of harm presented by housing pretrial detainees with convicted and sentenced murderers.

## DISCUSSION

*I. Summary Judgment Standard*

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together

---

**1.** Plaintiff has voluntarily withdrawn his denial of medical treatment claim. *See* (Pl.'s Response at ¶ 8).

with the affidavits, reveal no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). Our responsibility is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The presence of "a mere scintilla of evidence" in the nonmovant's favor will not avoid summary judgment. *Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir.1989) (citing *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505). Rather, we will grant summary judgment unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in favor of the non-moving party. *Id.* at 256, 106 S.Ct. 2505. Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the non-moving party must establish the existence of each element of its case. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.,* 909 F.2d 1524, 1531 (3d Cir.1990) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

## II. Deliberate Indifference to Substantial Risk of Harm: Failure to Protect

■ The Eighth Amendment requires prison officials to take reasonable measures to protect the safety of inmates. In order to obtain relief under the Eighth Amendment a plaintiff must show that the prison officials demonstrated a deliberate indifference to an inmate's health and safety. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994). The Court in *Farmer* defined "deliberate indifference" to mean that a prison official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists, and he must also draw the inference." *Id.* at 837, 114 S.Ct. at 1979.

■ Since Plaintiff was a pretrial detainee, the Eighth Amendment is not applicable. Instead, Plaintiff must seek relief under the Due Process Clause of the Fourteenth Amendment. However, courts have determined that the rights afforded pretrial detainees under the due process clause are at least as great as those afforded by the Eighth Amendment. *See Simmons v. City of Philadelphia,* 947 F.2d 1042, 1067 (3d Cir. 1991). Therefore, courts analyzing cases by pretrial detainees apply the same standard of deliberate indifference applied to the Eighth Amendment cases. *Id.*

■ Plaintiff contends that Defendants violated his rights by forcing him, as a pretrial detainee, to share housing with a convicted murderer who had just been sentenced to death, thereby exposing him to a known substantial risk of harm. Plaintiff argues that the danger in keeping these two populations together is so obvious that Defendants should be held to be deliberately indifferent for having such a practice, custom and policy.[2]

However, Plaintiff presents no evidence to support his contention that the commingling of these populations is so obviously dangerous that to allow it to occur is deliberately indifferent. For instance, Plaintiff does not present evidence, statistical or anecdotal, that demonstrates that convicted and sentenced criminals are especially dangerous to pretrial detainees. *Cf. Simmons,* 947 F.2d at 1070–71 (plaintiff presented evidence of number of suicides per year and that an expert provided a seminar to help prison employees to recognize signs of potential suicidal tendencies). Plaintiff does not present evidence of a high incidence or of any incidence of convicted and sentenced criminals becoming violent with pretrial detainees. Plaintiff does present an expert report in which his expert opines that it is deliberately indifferent to house these two populations together. However, Plaintiff's expert's report does not provide the evidence which forms the basis of

---

2. We note that Plaintiff does not challenge P.I.C.C.'s classification system for the initial housing determination. In fact, Plaintiff does not present any evidence about what P.I.C.C.'s initial classification system is or even whether there is an initial classification system.

the expert's opinion that this is true. *See* (Pl.'s Mem. at Ex. G).

Further, Plaintiff asserts that Defendants knew that Wayne was a violent inmate who had a history of attacking other inmates and that between Wayne's sentencing and the attack on Plaintiff, Wayne had attacked another inmate. However, other than Plaintiff's assertion that this is true and Plaintiff's expert's recitation of this fact in his expert report, Plaintiff does not offer to this Court any evidence that Wayne, in fact, had a history of violence against other inmates or had previously attacked an inmate at P.I.C.C.[3] *See Andrews v. C.O.I.M. Grabowski,* 1997 WL 698136 (E.D.Pa.) (granting summary judgment where one inmate was attacked by another inmate and the only evidence of "knowledge" was a memorandum allegedly written by a prison official outlining the attacker's violent propensity and his other misconduct reports); *Baker v. Lehman,* 932 F.Supp. 666 (E.D.Pa.1996) (granting summary judgment on inmate's failure to protect claim where only evidence inmate provided was a letter allegedly written one year prior to attack from inmate to prison official requesting separation from attacker); *cf. Schwartz v. County of Montgomery,* 823 F.Supp. 296, 301–02 (E.D.Pa.1993) (finding that where plaintiff had presented evidence to demonstrate that his attacker had, on nine previous occasions, violently raped other inmates and where on the day prior to plaintiff's attack, a Montgomery County Judge had stated from the bench that the attacker was a dangerous man who should be segregated from the general population at whatever facility he went to, plaintiff had demonstrated that the prison officials had sufficient knowledge to overcome a motion for summary judgment on deliberate indifference claim).

Plaintiff also argues that P.I.C.C. did not have any internal administrative procedures designed to prevent and correct inmate assaults upon one another. Plaintiff does not provide the Court with any evidence to support this claim either.[4]

Plaintiff further argues that Defendants' failure to perform an appropriate search that would have detected the weapon used by Wayne was deliberately indifferent. Once again, however, Plaintiff does not provide the Court with evidence concerning how frequently searches on inmates are conducted, how extensive these searches are, whether Wayne had been searched at any time, or any other relevant evidence concerning P.I.C.C.'s search procedure for the inmate population. Without any evidence, the Court can not assume that the prison was deliberately indifferent in not detecting the weapon used by Wayne.

■ Finally, Plaintiff argues that the prison officials demonstrated deliberate indifference by violating a statutory provision providing that "[s]entenced prisoners should be housed separately from those who are only accused of having committed a crime." 37 Pa.Code § 95.226(c)(3). However, this provision of the Pennsylvania Code (the "Code") is not a mandatory requirement but rather is a recommended guideline. *Id.* The Code has some minimum requirements concerning housing of prisoners as outlined in subdivision (b), which lists the mandatory housing arrangements. The Code then has some recommended guidelines. Plaintiff has failed to present evidence to demonstrate that the prison officials had sufficient knowledge or notice of the risks of not following this recommended guideline that not following it would equate to deliberate indifference.

■ Plaintiff also argues that one of the mandatory housing provisions of the Penn-

---

**3.** Presumably the housing facility would have a record of such an incident, but nothing of this sort was provided to the Court. Nor were any statements by any prison officials to this effect provided. Plaintiff's expert's report states that Wayne had been temporarily placed in disciplinary segregation for assaulting another inmate prior to the July 10, 1995 attack. However, once again, the source of this information is not provided to the Court.

**4.** Plaintiff's expert states that he came to this conclusion through Warden Harry Moore's answer to an interrogatory question. *See* (Pl.'s Mem. at Ex. G). However, Plaintiff does not even provide the Court with this alleged answer to the interrogatory.

sylvania Code, which provides that "[p]risoners considered to be habitual criminals shall be segregated," was violated. *Id.* at § 95.226(b)(1)(iii). Plaintiff attempts to argue that Wayne is such a habitual criminal. However, Plaintiff has not presented any authority which defines "habitual criminal" nor any evidence to demonstrate that Wayne fits this description.

Absent such evidence, Plaintiff can not show that Defendants were aware of facts from which the inference could be drawn that a substantial risk of harm existed in housing Wayne in the same cell block as Plaintiff, much less that Defendants drew that inference. *See Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff has not proven, but instead asks this Court to assume, that because Wayne was sentenced to a death sentence he was obviously a risk to a pretrial detainee. *See* (Pl.'s Mem at 9, 10, 11). However, to overcome a Motion for Summary Judgment Plaintiff must present to the Court "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). As Plaintiff has failed to meet this burden, we will grant Defendants' Motion for Summary Judgment for the failure to protect claim.

### III. Failure to Supervise

▆ In order to show supervisory liability, the supervisor "must have known of the constitutional deprivation, participated in the deprivation or acquiesced to the wrongful conduct." *Torres v. McLaughlin,* 1996 WL 680274, *8 (E.D.Pa.1996) (citing *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988)); *see also Kis v. County of Schuylkill,* 866 F.Supp. 1462, 1474 (E.D.Pa.1994). In order to make out a failure to supervise claim a plaintiff must: 1) "identify with particularity what the supervisory official failed to do that demonstrates his deliberate indifference; and 2) demonstrate a close causal relationship between the identified deficiency and the ultimate injury." *Kis,* 866 F.Supp. at 1474 (citing *Sample v. Diecks,* 885 F.2d 1099, 1118 (3d Cir.1989)).

▆ Plaintiff argues that the supervisor, Warden Harry Moore ("Warden Moore"),

should be held liable on a failure to supervise claim because he admits knowing that there were no special guidelines that prevented an inmate convicted of murder and sentenced to death from using the dayroom with the other prisoners assigned to his cell block. Plaintiff argues that failure to have such a policy is the particular act which deprived him of his constitutional rights and the proximate cause of his injury sufficient to satisfy the two prongs of the test.

Although Warden Moore does state in his answer to interrogatory number 54 that he knows of no special guidelines for housing criminals sentenced to death, Plaintiff has not shown any evidence to create a genuine issue of material fact concerning the need for such special guidelines. *See* Discussion *supra* Section II; *cf. Beck v. City of Pittsburgh,* 89 F.3d 966, 973 (3d Cir.1996) (plaintiff presented sufficient evidence from which a reasonable jury could infer that the Chief of Police of Pittsburgh and his department knew or should have known of Officer Williams violent behavior where plaintiff presented a series of written civil complaints alleging similar behavior by Officer Williams). As Plaintiff has not presented any evidence demonstrating the need for such guidelines, we will grant summary judgment as to the failure to supervise claim.

### IV. Failure to Train Claim

Plaintiff states a claim against the City of Philadelphia and Warden Moore for failure to train. Plaintiff claims that P.I.C.C. did not have adequate training programs to train the correctional officers as to when it was appropriate to separate and classify violent inmates.[5]

▆ A municipality can not be held liable on a *respondeat superior* theory. *Monell v. Dep't of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2036–38, 56 L.Ed.2d 611 (1978). "When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted

---

**5.** *See supra* note 2 (noting that Plaintiff has not presented any evidence concerning what, if any, classification system is utilized at P.I.C.C. in the initial housing determination).

by the governing body or informally adopted by custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir.1996); *see also Schwartz*, 823 F.Supp. at 300 (discussing more fully municipal liability with policy or custom claims).

The Supreme Court has determined that a municipality can be liable on a failure to train claim "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989). The Court further determined that "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* at 390, 109 S.Ct. at 1205. The Court also instructed that "the need for more or different training [must have been] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the city [could] reasonably be said to have been deliberately indifferent to the need." *Id.* Our court has held that to meet this standard "[t]he municipality's policy makers must be put on notice, whether actually or constructively, of the need for more training, or the need for a different policy, before they can be found deliberately indifferent to that need." *Fulkerson v. City of Lancaster*, 801 F.Supp. 1476, 1483 (E.D.Pa.1992). Further, "[w]e must be cautious about finding that a need is 'obvious' absent a history of violations, lest the federal courts become engaged in 'an endless exercise of second guessing municipal employee-training programs.'" *Id.* (quoting *City of Canton*, 489 U.S. at 391, 109 S.Ct. at 1206).

■ Defendants do not contest that there was no specific policy for separating a prisoner from the other inmates in the cell block based solely on that prisoner's status as a convicted and sentenced murderer and, thus, that P.I.C.C. employees were not trained to do that. Instead, Defendants argue that

Plaintiff has not presented any evidence to indicate that the need for such a guideline was at all obvious to protect the constitutional rights of the inmates. We agree. For the same reasons discussed *supra* in Sections II and III, we determine that Plaintiff has presented no evidence, save his expert's opinion which merely recites facts which are not documented on the record, from which a reasonable jury could find that the need for this training was so obvious as to make the lack of this training deliberately indifferent. Therefore, we will grant summary judgment on this claim as well.

*V. Pendent State Law Claims*

As we have granted summary judgment on all Plaintiff's federal claims, we decline to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c)(3).[6] Therefore, these claims shall be dismissed without prejudice.

---

**6.** 28 U.S.C. § 1367(c)(3) provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if

... (3) the district court has dismissed all claims over which it has original jurisdiction." *See also* 28 U.S.C. § 1367(d).