**Rolando Velez DESPAIGNE, Plaintiff,**

v.

**CROLEW, et al., Defendants.**

**No. CIV. A. 99–4944.**

United States District Court,
E.D. Pennsylvania.

Feb. 17, 2000.

## MEMORANDUM AND ORDER

KATZ, Senior District Judge.

Rolando Velez Despaigne, an INS detainee confined in Berks County Prison, brings this action under 42 U.S.C. § 1983, alleging violations of his constitutional rights by various prison officials. Now before the court is the defendants' motion for summary judgment.

### I. Background [1]

On June 1, 1999, Despaigne was involved in an altercation with Raymond Fairclough, another inmate.[2] As a result of this incident, Despaigne's face was bruised and swollen. The following day, Despaigne was interviewed by defendants Correction Officer Crolew, Sergeant Rice, and Senior Counselor John Wetzel and warned not to retaliate against Fairclough. On June 3, 1999, Despaigne was involved in a second altercation with Fairclough, in which Fairclough "got cut." Pl. Compl. at 4A. After this second incident, Despaigne was taken by defendants Correction Officer Gonzalez and Correction Officer Pino to disciplinary segregation, which he refers to as "the hole." See e.g., id. at 3. Once in the hole, Despaigne received pain killers from the nurse, which were part of his regular medication regime. See Def. Ex. B at 19 (Dep. of Despaigne).

A hearing was held on June 4, and Despaigne was found guilty of fighting and given a sentence of eighty days in disciplinary segregation. See Def. Ex. C (Report of Inmate Disciplinary Hearing). As a result of the two incidents, Despaigne was viewed as a security risk and placed in administrative segregation. See Def. Ex. F (Classification Records and Conduct and Behavior Records). Apparently, Despaigne remains in administrative segregation. See id. Despaigne appealed the findings of the disciplinary hearing to defendant

Rolando Velez Despaigne, Leesport, PA, for plaintiff.

Paola F. Tripodi, Richard J. Schmid, Jr., Holsten & White, Media, PA, for defendants.

1. All background facts are taken from plaintiff's pleadings unless otherwise indicated.

2. Although Despaigne only identifies the other inmate as John Doe detainee, the defendants'

submissions identify him as Raymond Fairclough. See Def. Ex. C (Report of Inmate Disciplinary Hearing).

Wagner, the warden of the prison, on the grounds that his confinement in the hole was the result of the other defendants' failure to protect him. He also complained to Wagner that the other defendants denied him access to medical care.

Despaigne was prosecuted for the June 3 assault on the Fairclough and on December 17, 1999, was sentenced by the Court of Common Pleas of Berks County to twenty-one months to four years. *See* Def. Ex. E (Sentence Order).

## II. Discussion[3]

■ Despaigne brings his suit under 42 U.S.C. § 1983, alleging that his rights under the Eighth and Fourteenth Amendments have been violated. Specifically, he claims that defendants Crolew, Gonzalez, and Pino were aware of his injuries from the first fight but did not send him to the

infirmary, thus denying him appropriate medical care for his injuries. He also alleges that after the first altercation, defendants Crolew, Rice, Wetzel, and Ulrich failed to separate him from Fairclough, thereby failing to protect him from the second incident. Despaigne's complaint against defendant Wagner, the warden, appears to be based on Wagner's denial of his appeal and his failure to supervise the other defendants. Finally, Despaigne generally alleges that he was wrongly place in the hole because of the defendants' violations of his rights. He is seeking a declaratory judgment that his rights have been violated and release from the hole.[4]

### A. Standards

■ Although the protections of the Eighth Amendment are not available to Despaigne because he was an INS detain-

**3.** Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When ruling on a summary judgment motion, the court must construe the evidence and any reasonable inferences drawn from such evidence in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Therefore, if the evidence presented by the parties conflicts, the court must accept as true the allegations of the non-moving party. *See id.* However, summary judgment is to be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

**4.** The court rejects defendants' argument that because Despaigne is seeking release from the hole, his suit must be brought as a petition for habeas corpus rather than as a 42 U.S.C. § 1983 action. Defendants rely upon *Preiser v. Rodriguez,* 411 U.S. 475, 489, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), for the proposition that a habeas petition is the sole means

by which a prisoner may challenge the fact or duration of his confinement. In *Preiser,* the plaintiffs brought a section 1983 action challenging the deprivation of their good time credits. Because these credits affected the length of the plaintiffs' incarceration, the Court held that the suit could not be brought as a civil rights action. *See id.* The Third Circuit has not addressed whether a suit that only challenges placement in administrative segregation falls within the ambit of *Preiser,* and there is a split among the circuits that have faced this question. *See Brown v. Plaut,* 131 F.3d 163, 167–68 (D.C.Cir.1997) (holding that a suit "which challenges only [a prisoner's] placement in administrative segregation is not of the type to which it is appropriate to apply *Preiser* and its progeny"); *see also Jenkins v. Haubert,* 179 F.3d 19, 27 (2d Cir.1999) (holding same). *But see Stone–Bey v. Barnes,* 120 F.3d 718, 721 (7th Cir.1997) (holding habeas is the only avenue by which a prisoner may bring suit challenging only placement in administrative segregation). The courts in *Brown* and *Jenkins* found the rule of *Preiser* inapplicable to challenges to an inmate's placement in administrative segregation because such suits involved attacks on the conditions of the inmate's confinement, not the length or fact of his custody. *See Brown,* 131 F.3d at 167; *Jenkins,* 179 F.3d at 27. The court finds the reasoning of *Brown* and *Jenkins* persuasive and applicable here, as Despaigne is not seeking release from custody, but at most, is challenging his placement in administrative segregation.

ee when the alleged constitutional violations occurred, they still provide the appropriate standards by which to evaluate his claim. The Eighth Amendment does not apply to those who have not been convicted of a crime. *See Ingraham v. Wright,* 430 U.S. 651, 671–72 n. 40, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) ("The Eighth Amendment applies only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.") Although the Third Circuit has not directly addressed the issue, other courts have analogized the situation of an INS detainee to that of a pretrial detainee, *see, e.g., Preval v. Reno,* 57 F.Supp.2d 307, 311, 311 n. 5 (E.D.Va. 1999) (finding the rights of an INS detainee to be akin to that of pretrial detainee and citing cases finding the same), whose protections stem from the Due Process Clause of the Fourteenth Amendment. *See Ingraham,* 430 U.S. at 671–72 n. 40, 97 S.Ct. 1401; *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). The rights of a pretrial detainee are at least as great as those of a convicted prisoner. *See Simmons v. City of Philadelphia,* 947 F.2d 1042, 1067 (3d Cir.1991); *Colburn v. Upper Darby Township,* 838 F.2d 663, 668 (3d Cir.1988); *Faulcon v. City of Philadelphia,* 18 F.Supp.2d 537, 540 (E.D.Pa.1998). As the Fourth Amendment in this context simply incorporates the protections of the Eighth Amendment, the court will apply the standards of both the Eighth and Fourteenth Amendments in analyzing Despaigne's claims.

**B. Denial of Medical Care**

██ Despaigne has failed to show that defendants Crolew, Pino, and Gonzalez violated his constitutional rights because he does not demonstrate either that his injuries were serious enough to warrant constitutional protection or that the defendants acted with deliberate indifference. Denial of medical care constitutes a constitutional violation where a prison official has been deliberately indifferent to the serious medical needs of an inmate. *See Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Monmouth County Correctional Inst. v. Lanzaro,* 834 F.2d 326, 346 (3d Cir.1987); *see also Brown v. Borough of Chambersburg,* 903 F.2d 274, 278 (3d Cir.1990) (holding that the *Estelle* deliberate indifference standard applies to pretrial detainees). Despaigne has failed to demonstrate that his medical condition was serious. In order for an injury to fall within the protection of Eighth Amendment, it must be a condition that has been diagnosed by a physician as requiring treatment or "one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth,* 834 F.2d at 347. The serious nature of a medical need may be determined by the effect of denying treatment; for example, a denial or delay that causes an inmate to suffer lifelong loss or a permanent handicap is serious. *See id.* Despaigne alleges only that, as a result of a fight, he suffered visible swelling and bruising and that the defendants failed to take the initiative by offering him medical treatment. He does not allege that he suffered any significant or permanent effects as a result of this swelling and bruising. *See* Def. Ex. B at 20 (stating that his bruises eventually went away). He acknowledges that he received medication for pain, at the latest several hours after he entered the hole and does not claim to have requested any additional treatment. *See Walmsley v. City of Philadelphia,* 872 F.2d 546, 552 (3d Cir.1989) (affirming directed verdict for defendant on claim of denial of medical treatment where defendant had observed plaintiff's injuries but had no reason to believe plaintiff suffered injuries more severe than those resulting from a fist fight); *Boring v. Kozakiewicz,* 833 F.2d 468, 473 (3d Cir. 1987) (due process clause does not require that pretrial detainees receive hospital care for minor injuries). In light of these considerations, Despaigne has failed to establish that his injuries obviously required medical attention, a necessary precondition to triggering the defendants' obligations to provide him with care in the absence of

any complaints of pain or requests by Despaigne for treatment.

Despaigne has also presented no evidence that the defendants were deliberately indifferent to his medical needs. In order to demonstrate deliberate indifference, a plaintiff must show that the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 838, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Under *Farmer*, deliberate indifference is a subjective inquiry—the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Id.* Negligence on the part of the official will not sustain a claim of inadequate medical treatment. *See Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993). Even assuming his injuries were serious, Despaigne has failed to show that defendants Crolew, Pino, and Gonzalez subjectively realized that his condition warranted medical treatment. Again, he does not claim to have complained of pain or asked the defendants to take him to the infirmary. At most, he has shown that they were negligent in failing to notice his bruising and swelling.

Despaigne has not shown the existence of a genuine issue of material fact regarding his claim for denial of medical treatment, because he cannot show either that his injuries were serious or that the defendants were deliberately indifferent to his need for treatment. Summary judgment is granted in favor of defendants Crolew, Gonzalez, and Pino on this claim.

### C. Failure to Protect

Desaigne also fails to establish a genuine issue of material fact on his failure to protect claim because he does not show that the defendants were subjectively aware of a risk of harm to him or that defendants acted unreasonably by simply warning him not to retaliate.

While a prison official has a duty to protect prisoners from attacks by other prisoner, not every injury suffered by a prisoner at the hands of another translates to constitutional liability for the officials responsible for the prisoner's safety. *See Farmer*, 511 U.S. at 833–34, 114 S.Ct. 1970. In this context, the Eighth Amendment is violated when a prison official has exhibited a "deliberate indifference to a substantial risk of serious harm to an inmate." *Id.* at 828, 114 S.Ct. 1970. To survive summary judgment on a failure to protect claim, a plaintiff must produce sufficient evidence of "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; (3) causation." *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir.1997).

■ Despaigne does not show that defendants had the requisite subjective indifference to his safety. *See Farmer*, 511 U.S. at 838, 114 S.Ct. 1970. Although the warning he received from defendants Crolew, Rice, and Wetzel not to retaliate against Fairclough demonstrates that they were aware of some risk, Despaigne has failed to demonstrate that defendants were subjectively aware of a risk to him. Rather, by Despaigne's own account, the defendants considered any risk of harm from the first incident to be to Fairclough. Any inference of harm that Crolew, Rice, and Wetzel drew from available facts was not an inference of harm to Despaigne.

Despaigne has also failed to show that defendant Ulrich had the requisite subjective mental state. He simply alleges that Ulrich knew of the first incident and failed to separate him from Fairclough. There is no evidence in the record, however, that Ulrich actually drew an inference of a substantial risk of harm to Despaigne.

■ Even assuming that, by warning Despaigne not to retaliate, Crolew, Rice, and Wetzel were subjectively aware of a risk of substantial harm to him, defendants took reasonable precautions to avert the risk. Prison officials who act reasonably in the face of a known risk cannot be found liable under the Eighth Amendment, even if the harm was not ultimately averted by

their actions. *See Farmer*, 511 U.S. at 844–845, 114 S.Ct. 1970; *Hamilton*, 117 F.3d at 748. In response to the first fight, defendants warned Despaigne of repercussions if he retaliated against Fairclough. There is no evidence of that Fairclough had threatened Despaigne or even that Fairclough had a history of violence. *See Hamilton*, 117 F.3d at 746–48 (reversing grant of summary judgment where defendant failed to place plaintiff in protective custody despite recommendation and documented history of attacks against plaintiff); *Young v. Quinlan*, 960 F.2d 351, 362 (3d Cir.1992) (reversing grant of summary judgment where there was extensive evidence that defendants ignored plaintiff's complaints of multiple assaults and requests for protective custody). Although their method of averting future violence was ultimately unsuccessful, it was reasonable for Crolew, Rice, and Wetzel to conclude that the first altercation was an isolated incident and that their actions were sufficient to prevent any reprisals.

Summary judgment is granted in favor of the defendants on Despaigne's failure to protect claim.

### C. Failure to Supervise

■ The court also grants summary judgment in favor of defendant Wagner based on his alleged failure to supervise. In order for a supervisor to be liable, the supervisor must have known of the constitutional deprivation, participated in the deprivation, or acquiesced to the wrongful conduct. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988); *Faulcon*, 18 F.Supp.2d at 542. Despaigne does not show any knowledge, participation, or acquiescence by Wagner of the alleged constitutional deprivations by the other defendants. In addition, because the court finds Despaigne's predicate claims of constitutional violations by the other defendants to be invalid, his supervisory liability claim must fail as well.

### Conclusion

Summary judgment is granted in favor of the defendants because Despaigne has failed establish that the defendants failed to provide him with adequate medical care or that they failed to protect him.

An appropriate order follows.

### ORDER

**AND NOW,** this 17th day of February, 2000, upon consideration of defendants' motion for summary judgment, and the response thereto, it is hereby **ORDERED** that said motion is **GRANTED.**

This case is to be marked **CLOSED.**